IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LAURA MACDONALD | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | |
| TPG HOTELS & RESORTS, INC., et al., | : | NO. 24-4830 |
| | : | |

## OPINION

### I. Introduction

Before this Court are cross motions for summary judgment filed by the defendants in this case, TPG Hotels & Resorts, Inc. ("TPG" or "Manager") and ANZ SPE Langhorne, LLC ("ANZ" or "Owner"). Manager seeks affirmative summary judgment from this Court on its crossclaim, which would require Owner to indemnify Manager in relation to this suit. Owner asks this Court to rule in the opposite manner. Because the clear language of the agreement between the parties requires indemnification in this case, and because the indemnification provision is enforceable as a matter of law, the Court grants summary judgment in favor of Manager TPG on its crossclaim and denies Owner ANZ's motion for summary judgment.

### II. Factual Background

In October 2023, TPG and ANZ (together, the "Parties") entered into a Hotel Management Agreement. (*See*: Dkt. #32-5 at ¶ 1). This agreement (Dkt. #32-4, hereinafter the "Agreement") was consummated because ANZ owned the Sheraton

1

Bucks County Hotel (the "Hotel"), and wished TPG to "manage, market, and operate" the hotel on ANZ's behalf. (Agreement at Preamble). The Agreement specified that Manager would have "control of the operations of the Hotel," including the "unfettered right to determine operating policy, standards of operation, quality of service and all other matters affecting the management and operations of the Hotel." (Agreement at ¶ 3(b)). Included among Manager's general obligations is control over hotel personnel as follows:

> Manager shall, as agent for and at the expense of Owner, hire, supervise, direct the work of, promote, discharge and determine the compensation (including fringe benefits) of, and terms of employment of all personnel working in the Hotel, as deemed necessary and desirable to the Manager for the successful operation of the Hotel. Manager shall be the sole judge of the fitness and qualifications of such personnel and is vested with discretion in the *hiring, discharging, supervision, and direction* of Owner's personnel.

(Agreement at §4(g)) (emphasis added).

Importantly, the Agreement contains several provisions which address when Owner is required the indemnify Manager. Most relevantly, the section entitled "Indemnity by Owner" provides:

> [T]o the extent that Manager shall not be fully covered by insurance required to be maintained pursuant to this Agreement, Gross Revenues are not sufficient to pay all liabilities, and/or in the event Owner shall not be fully covered by insurance required under this Agreement, Owner shall indemnify, defend, and hold harmless Manager and its directors, officers, employees and agents from and against any damages, loss, liability, cost, action, cause, claim or expense, including reasonable attorneys' fees, arising out of, or incurred in connection with the management and operation of the Hotel. For the avoidance of doubt, if the liabilities occurring during the Term are attributable to the fraud, theft, or willful misconduct (defined to mean the conscious or intentional disregard of the rights or safety of others) of the Manager, including the

2

>Executive Personnel, the cost thereof shall be borne solely by Manager and not paid out of Gross Revenues or indemnified by Owner.

(Agreement at § 11(c)). Specifically, as to claims involving employees and independent contractors, the Agreement says:

>Owner shall be solely responsible for and shall indemnify and hold harmless, and when necessary, reimburse the Manager for any and all reasonable personnel expenses, reasonable costs, liabilities and claims which are or would be related or incidental to any personnel in the employ of the Owner at the Hotel or, are employed by the Manager at the Hotel, including by way of example only, all salaries, wages, other compensation, and fringe benefits which are required to be paid by the Manager hereunder.

(Agreement at § 5(c)). Finally, as to litigation for which Manager may incur expense but which might involve Owner as a party but not Manager, the Agreement provides:

>In the event, during the term of this Agreement, Owner becomes involved in Litigation in which Manager is not named as a Party in the Litigation, but Manager is compelled to appear at trial, a deposition, or to produce certain documents, Owner shall reimburse Manager for all reasonable litigation expenses Manager incurs.

(Agreement at §5(g)).

On September 12, 2024, Laura MacDonald, a former Director of Sales and Marketing at the Hotel, brought this litigation against TPG and ANZ. Ms. MacDonald alleges various claims for employment discrimination based upon age and disability against TPG and ANZ. (Dkt. #31-3 at ¶ 2). On October 23, 2024, Manager wrote to Owner demanding Owner provide a defense, indemnification, and insurance coverage to Manager with respect to this case. (Dkt. #31-7 at 5). On December 20, 2024, Manager filed a crossclaim in this case against Owner for defense and indemnification, based upon the Agreement. (Dkt. #31-3 at ¶ 5).

### III.     Legal Standard

Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law. *Tse v. Ventana Med. Sys., Inc.*, 297 F.3d 210, 218 (3d Cir. 2002). This Court "must view the facts in the light most favorable to the non-moving party" and make every reasonable inference in that party's favor. *Hugh v. Butler Cty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005). After drawing those inferences, the relevant inquiry is "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Genuine issues of material fact refer to any reasonable disagreement over an outcome-determinative fact." *In re Energy Future Holdings Corp.*, 990 F.3d 728, 737 (3d Cir. 2021). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Liberty Lobby*, 477 U.S. at 252. "The same standards and burdens apply on cross-motions for summary judgment." *Allah v. Ricci*, 12–4095, 2013 WL 3816043 (3d Cir. July 24, 2013).[1]

---

[1] As a formal matter, this Court must consider each motion on its own, granting TPG all reasonable inferences as to ANZ's motion, and *vice versa*, But in the case at bar, the Parties seem to agree as to the crucial facts, and summary judgment will hinge on this Court's resolution of questions of law as to interpretation of the Agreement. For that reason, the Court's analysis of both motions can effectively be handled at once.

Under Pennsylvania Law, "[t]he fundamental rule in interpreting the meaning of a contract is to ascertain and give effect to the intent of the contracting parties." *Indian Harbor Ins. Co. v. F & M Equip., Ltd.*, 804 F.3d 310, 313 (3d Cir.2015). The United States Court of Appeals for the Third Circuit has well summarized this Courts role in contract interpretation:

> First, we must determine (as a matter of law) whether contractual language is ambiguous.... *Hutchison v. Sunbeam Coal Corp.*, 513 Pa. 192, 519 A.2d 385, 390 (1986). If we determine that the language is unambiguous, we follow its plain meaning. If, however, we conclude that the language is ambiguous, we leave it to a factfinder to decide its meaning. *See Ins. Adjustment Bureau, Inc. v. Allstate Ins., Inc.*, 588 Pa. 470, 905 A.2d 462, 469 (2006).

*Pac. Employers Ins. Co. v. Glob. Reinsurance Corp. of Am.*, 693 F.3d 417, 426 (3d Cir. 2012) (interpreting Pennsylvania and New York law; references to New York law omitted). A contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. *Ins. Adjustment Bureau,* 905 A.2d 462, 468–69. The mere fact that the parties do not agree on the proper construction does not make a contract ambiguous. *See Metzger v. Clifford Realty Corp.,* 476 A.2d 1, 5 (Pa. Super. 1984).

Indemnity provisions are generally enforceable under Pennsylvania law if they meet certain standards.

> First, the clause must not contravene public policy. Second, the contract must relate solely to the private affairs of the contracting parties and not include a matter of public interest. Third, each party must be a free bargaining agent. In addition, an exculpatory or indemnity clause will still not be enforced unless it is clear that the beneficiary of the clause is being relieved of liability only for his/her own acts of negligence. The clause must be construed strictly and the contract must state the intention of the parties with the greatest particularity. Furthermore,

any ambiguity must be construed against the party seeking immunity, and that party also has the burden of proving each of the prerequisites to enforcement.

*Valhal Corp. v. Sullivan Assocs., Inc.*, 44 F.3d 195, 202 (3d Cir. 1995).

## IV.   Analysis

Because the parties have agreed there is no genuine dispute of material fact, what is left for the Court is to apply the law in interpreting the Agreement. The Agreement specifies that the laws of the Commonwealth of Pennsylvania govern, and this election of Pennsylvania law is not challenged by either party.

### a. Section 11(c) of the Agreement requires indemnification.

The first question this Court must answer is whether the Agreement requires Owner to indemnify Manager. If it does, the Court will move on to examine whether that provision is enforceable. As to that first question, the Court agrees with Manager that the Agreement's indemnification, defense, and hold harmless provisions apply to Plaintiff's claim. More specifically, §11(c) of the Agreement provides:

> (c) <u>Indemnity by Owner</u>… Owner shall indemnify, defend, and hold harmless Manager… from and against any damages, loss, liability, cost, action, cause, claim or expense, including reasonable attorneys' fees, arising out of, or incurred in connection with the management and operation of the Hotel.

(Dkt. #30-3. Ex. A § 11(c)). The Parties and this Court all agree that this provision is unambiguous. Rather than claiming ambiguity, Owner attempts to avoid the plain meaning of this provision by calling into question whether it is applicable on the facts alleged by Plaintiff in this case.

6

Owner's argument in this respect is bit perplexing. Owner asserts that this provision does not contemplate or provide indemnity to Manager in this case because the accrual of attorney's fees has resulted from the retention of counsel, not the day-to-day operations of the Hotel. Therefore, Owner would be free from responsibility because hiring an attorney is not "in connection with the management and operation of the Hotel." (Dkt. #31-2. at 14-15).

The truth of the matter is that employment discrimination lawsuits, both meritorious and frivolous, are simply a fact of life in the business world. This litigation, and therefore the appurtenant attorney fees, arose from an alleged wrongful termination, discrimination, and a hostile work environment claim, which itself clearly arose from the management of the Hotel. The plain meaning of management is well understood as having a role in the hiring, discharging, and fair treatment of employees. Nowhere is that self-evident conclusion better stated than in the Agreement itself, which states:

> Manager shall, as agent for and at the expense of Owner, hire, supervise, direct the work of, promote, [and] discharge… all personnel working in the Hotel, as deemed necessary and desirable to the Manager for the successful operation of the Hotel. Manager shall be the sole judge of the fitness and qualifications of such personnel and is vested with discretion in the *hiring, discharging, supervision, and direction* of Owner's personnel.

(Dkt. #30-3. Ex. A § 4(g)) (emphasis added). It is clear to the Court that §11(c) by its plain meaning provides Manager defense, indemnity, and to be held harmless by Owner in this case because this litigation arose in connection with the management and operation of the Hotel. The Agreement vests total discretion in Manager with

respect to decisions regarding hiring and firing. To claim this action does not arise out of its execution of its responsibility to manage and operate the Hotel strains credulity.

Owner's assertion that hiring an attorney in connection with this litigation is not an action taken in connection with the operation of the Hotel is confounding and circular. Were Owner's reading to be accurate, the language which requires indemnification for attorney's fees would be entirely surplusage, a provision that could never apply. Because how could someone ever accrue attorney's fees except by the retention of counsel?

Owner's citation to *Kolmar Korea Co. v. Process Techs.* is easily distinguishable. 3:19-cv-01561, 2020 WL 4783080 (M.D. Pa. Feb. 27, 2020). In *Kolmar*, the question had nothing to do with an indemnity agreement or a contractor relationship. Rather, the question was whether Lard-PT, a 50% owner of Process Tech, LLC, could retain counsel for Process Tech and file responsive pleadings on its behalf in a lawsuit brought by Kolmar, the other 50% owner of the LLC. *Id.* at *2. Because Process Tech's operating agreement did not define the day-to-day operations of the LLC which were left to Lard-PT, the Court relied on long-settled principles of Delaware LLC law which prohibit a deadlocked LLC from acting in litigation and barred Lard-PT from obtaining counsel for Process Tech. *Id.* Here, in stark contrast, the contract clearly contemplates personnel management as part of the operations of the Hotel, and therefore obtaining counsel in this litigation is squarely within the bounds of Section 11(c).

**b. Section 5(c) of the Contract also supports indemnification.**

The application of 11(c)'s general indemnification provision to this case is made all the more plausible by Section 5(c), which states:

> (c) <u>Employees/Independent Contractors</u>. Owner shall be solely responsible for and shall indemnify and hold harmless, and when necessary, reimburse the Manager for any and all reasonable personnel expenses, reasonable costs, liabilities and claims which are or would be related or incidental to any personnel in the employ of the Owner at the Hotel or, are employed by the Manager at the Hotel, including by way of example only, all salaries, wages, other compensation, and fringe benefits which are required to be paid by the Manager hereunder.

(Agreement at § 5(c)). Manager argues that the plain meaning of this provision provides Owner "shall indemnify and hold harmless TPG, the Manager, in liabilities and claims *in addition to* indemnification for reasonable personnel expenses, reasonable costs." (Dkt. #32-2. at 6).

Owner contends that the litigation does not fall within the scope of "reasonable personnel expenses, reasonable costs, liabilities, and claims." Owner argues that "a personnel expense, cost, liability or claim is easily interpreted here as a charge or cost involved or required for the employment of personnel." (Dkt. #31-2. at 10). Its reply brief provides further clarification stating "[l]iability can arise in all the examples set forth in this provision for example, late payment, incorrect payment, mismanagement of benefits/401(k), and issues with qualifying events are all claims and liabilities that could arise as related or incidental to any personnel." (Dkt. #33. at 13) (cleaned up). Owner attempts to narrow what this provision might mean by pointing to the

9

examples listed. In this way, Owner asks the Court to interpret the Agreement in its favor by way of the *expressio unius* canon of construction.[2]

The Court finds this argument unavailing. Defining a personnel expense, cost, liability or claim as a prospective employee filing an action against them for late payment, while, in the same breath, arguing that an employee filing an employment discrimination action against them simply does not add up. The plain meaning of § 5(c) provides that Owner shall indemnify and hold harmless TPG, the Manager, in liabilities and claims in addition to indemnification for reasonable personnel expenses and reasonable costs. While pending, this litigation is a "claim" related to personnel, by any definition of that word. If found responsible for discrimination, the verdict would obviously be a liability until it is paid. The plain language begins and ends this inquiry.

Owner's attempt to use the examples as a narrowing principle must also be rejected. The examples through which Owner attempts to seek safe harbor are explicitly given "by way of example **only**." (Agreement at § 5(c) (emphasis added). Without that phrase, Owner's argument might be more appealing. But in light of how the plain meaning of the words "liabilities and claims" applies to the present lawsuit, this Court cannot be heavily influenced by a list of examples that the Parties expressly chose to deemphasize.

---

[2] *Expressio unius est exclusio alterius* is a Latin term used in law that means "to express or include one thing implies the exclusion of the other, or of the alternative." This means that if a law or contract explicitly mentions one thing, it is assumed that other things are not included or allowed.

10

Owner also seems to argue that the word "reasonable" should be understood to modify "liability" and "claim." If that is its argument, that, too, must be rejected. The word "reasonable" appearing twice in the sentence precludes the Court from reading it to be a qualifier term also attached to liabilities and claims. If the intention was for the word "reasonable" to modify the entire list, there would be no grammatical sense to repeating it before "costs" as well. Owner's strained reading of this provision cannot prevail.

### c. Section 5(g) of the Agreement does not weigh against indemnification in these proceedings.

By its own terms, § 5(g) only actively applies when Owner is sued, Manager is not, and Manager incurs resultant litigation expenses. Presumably, this provision is designed to account for a situation where Manager is subpoenaed for documents or must find representation for an employee who is going to be deposed. §5(g) provides:

> 5(g) <u>Litigation Expenses</u>. In the event, during the term of this Agreement, Owner becomes involved in Litigation in which Manager is not named as a Party in the Litigation, but Manager is compelled to appear at trial, a deposition, or to produce certain documents, Owner shall reimburse Manager for all reasonable litigation expenses Manager incurs.

(Dkt. #30-3. Ex. A § 5(g)). Of course, this is not the case here, as both ANZ and TPG are defendants, and therefore § 5(g) is not directly relevant to this litigation.

In its final attempt to avoid the plain reading of the aforementioned provisions, Owner calls the Courts attention to this provision by way of again utilizing an *expressio unius* argument. Owner asserts by the existence of this provision, the Agreement implicitly did not intend to extend coverage of litigation expenses to

11

Manager in all other circumstances. On the other side of that interpretive coin is Pennsylvania's longstanding canon of contract interpretation that the specific controls over the general, which would counsel in favor of cabining this provision to its own circumstances and applying the more naturally-applicable language of § 11(c) and particularly § 5(c) to the case at bar. *Nitardy v. Chabot*, 195 A.3d 941, 952 (Pa. Super. 2018) (noting that the specific controls over the general in contract interpretation). As will be explained *infra*, Owner's argument also creates tension with Pennsylvania's rule that contracts should be interpreted to avoid surplusage. *See Riverside Sch. Dist. v. Career Tech. Ctr. of Lackawanna Cnty.*, 104 A.3d 73, 76 (Pa. Commw. Ct. 2014).

As the Honorable Judge McHugh recently observed, these canons of interpretation are often afforded too much weight, despite their limited utility. *KMS Dev. Partners LP v. Fed. Ins. Co.*, 763 F. Supp. 3d 691, 696-97 (E.D. Pa. 2025). Frequently, as here and in *KMS*, these canons of interpretation point in opposite directions. *See id.* As Judge McHugh observed, that means "the solution is not to try and choose between them." *Id.* at 697.

Starting, therefore, from first principles, this Court finds that § 5(g) provides little to no support for Owner's reading of this provision. The problem with Owner's argument of implication, of course, is that the Agreement *explicitly* require Owner to cover Manager's legal fees and expenses in the relevant sections discussed *supra*. So, in a matter of speaking, the contract already "expressed" both concepts. The contract

12

*explicitly* creates a broad right of indemnification in § 11(c), which cannot be upset by the implication Owner seeks.

Concededly, this reading of the Agreement appears at first glance to create a surplusage issue. After all, reading § 11(c) literally and broadly, would seem to apply equally to Manager in both the present situation or another hypothetical situation where the suit is just against Owner and Manager is involved merely by way of third-party discovery. If § 11(c) renders § 5(g) surplusage in all situations, that at least arguably cuts against the reading of § 11(c) articulated above and lends credence to the *expressio unius* argument.

But the surplusage create by § 11(c) is situational, not total. Imagine a scenario where Owner is being sued with respect to another project it takes on, and the Hotel's financials become implicated as part of a damages calculation. Or maybe Owner's sole proprietor is being sued personally and the plaintiff in that case seeks to pierce the corporate veil to go after Owner's assets. In that case, Manager's legal expenses would (at least arguably) not be incurred "in connection with the management and operation of the Hotel." *See* § 11(c). Perhaps sensing that ambiguity, the Parties drafted § 5(g), which closes that loop and makes it clear that even when Manager is not a party to the suit, Owner is still on the hook for its expenses.

It is Owner's reading, on the other hand, which would actually create impermissible surplusage. If the Court were to buy Owner's *expressio unius* argument, it would effectively void § 11(c) and § 5(c)'s express grant of attorney's fees in all but the rarest occasion where Manager is not sued but Owner is. To read § 5(g)

13

to more or less deprive § 11(c) and § 5(c) of their meaning would lead to an absurd result the parties simply could not have intended when they drafted those provisions.

As this somewhat-tortured analysis shows, Manager offers the Court a common sense reading of the Agreement, which gives life to all the implicated provisions. Conversely, Owner offers the Court a webbed maze of Latin maxims and provisions in conflict with each other. Based upon Pennsylvania law, this Court reads the provisions of the Agreement the simple way Manager does.

### d. The indemnification provisions are enforceable.

It is clear to the Court that by the unambiguous meaning of the Agreement, Manager is owed defense, indemnity, and to be held harmless by Owner. The Court will now address if the indemnification clauses of the Agreement are enforceable. As to the first element (discussed s*upra*), this Court finds no basis from which it could conclude the indemnification clauses contravene public policy. These are garden variety indemnification clauses which do not appear to implicate any public policy concerns. Second, the clauses do indeed relate solely to the relationship between the parties. The clauses do not attempt to bind third parties or somehow limit what a third party could collect in a suit. It merely requires Owner to reimburse Manager if Manager is forced to litigate and/or incurs a liability. Third, there is nothing before this Court would suggest that Manager and Owner are not free bargaining agents. Fourth, the provisions relieve liability for Manager only for its own negligence.

Further, the Court finds that the indemnification clauses referenced above apply, even construing the provision narrowly and against Manager. Manager and

the Court's common interpretation of the Agreement is unambiguously the only reasonable interpretation of it, and Owner's strained arguments to the contrary do not suggest the existence of ambiguity. For that reason, the indemnity provisions are both implicated and enforceable.

## V. Conclusion

For the reasons explained above, this Court will grant summary judgment in favor of Manager and permit it to reap the very clear benefit of the bargain it reached with Owner. Owner is ordered to indemnify Manager in the fullest manner required by the Agreement.

DATED: August 20, 2025         BY THE COURT:

                              _____
                              GAIL WEILHEIMER        J.